Robert **TAYLOR, Patrick Roberts, Gerry Noel, Robert Sturgeon, Robert McCray, and Lawrence Scibilia, individually and as class representatives of all persons similarly situated, Plaintiffs–Appellants,**

v.

**FORD MOTOR COMPANY; International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (UAW); and International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (UAW) Local 600, jointly and severally, Defendants–Appellees.**

No. 88–1186.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 6, 1988.

Decided Feb. 6, 1989.

---

Harold Dunne (argued), Livonia, Mich., for plaintiffs-appellants.

James C. Curtiss (argued), Dearborn, Mich., for defendants-appellees.

Ralph O. Jones (argued), Detroit, Mich., for Intern. Union.

Before MERRITT and GUY, Circuit Judges, and EDWARDS, Senior Circuit Judge.

RALPH B. GUY, Jr., Circuit Judge.

Plaintiffs appeal from a summary judgment granted in favor of all defendants in this hybrid section 301/unfair representation suit. 29 U.S.C. § 185(a). Plaintiffs are former Ford Motor Company (Ford) skilled trades employees who sued Ford alleging that they had been improperly "bumped" from their jobs in the Ford Rouge complex in violation of the collective bargaining agreement (CBA). This dispute was arbitrated, and the arbitrator rejected plaintiffs' contentions. The plaintiffs have also exhausted their internal union remedies.

In order for an employee to maintain a suit against his employer for breach of the collective bargaining agreement, he must first prove that his union breached its duty of fair representation. The employee must establish that the union's actions were "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). When a dispute proceeds to arbitration with a decision in favor of the employer, the employee must not only prove unfair representation, he must also prove that "there is substantial reason to believe that a union breach of duty contributed to the erroneous outcome of the contractual proceedings." *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 568, 96 S.Ct. 1048, 1058, 47 L.Ed.2d 231 (1976). The district judge, applying these familiar principles of law, concluded that there had been no breach of the duty of fair representation. We agree and affirm.

## I.

In 1971, Ford opened the Michigan Casting Center (MCC) in Flat Rock, Michigan. A number of employees from the Ford Rouge Plant complex transferred to MCC. On June 4, 1971, Ford and the UAW entered into a Transfer and Recognition Agreement which provided, in pertinent part, in paragraph six:

The provisions of the Local Agreement—Rouge Area, dated September 20, 1958, and subsequently modified on January 16, 1959, and October 11, 1961, relating to recall will be extended to the Michigan

Casting Center except that it will apply only to otherwise eligible employes with one or more years' seniority as of the date of this Agreement who are laid off in a permanent reduction in force for at least 60 days or more from either the Michigan Casting Center or from Rouge Area units covered by the September 20, 1958 Agreement, as amended.

In 1981, Ford decided to close the MCC and to permit its employees who had Rouge seniority to bump back into the Rouge. Everyone involved agreed that production workers had bumping rights, but a dispute arose as to skilled trades employees. Ford, the MCC unit, and the Rouge unit agreed to submit the dispute to an impartial umpire pursuant to the grievance procedures of the CBA.

At the hearing before the umpire on June 26, 1981, Ford took the position that MCC skilled trades employees retained bumping rights into the Rouge and presented the testimony of two company representatives who had participated in negotiating the Transfer and Recognition Agreement. Local union representatives from the MCC took the same position, submitted a written statement of position, the testimony of several skilled trades employees who had transferred to the MCC, and numerous signed statements. Local union representatives from the Rouge contended that MCC skilled trades employees retained no recall rights to the Rouge. The Rouge union representatives presented a written statement of position, the testimony of several skilled trades employees, and numerous signed statements. The National Ford Department of the UAW remained neutral.

On July 14, 1981, the umpire issued an opinion upholding the position of the MCC unit. The umpire based his decision "first and foremost" on the language of paragraph six of the June 4, 1971, agreement which he found to be clear and unambiguous. The umpire also considered past practices, contemporaneous news articles, and union meeting minutes. The umpire also credited the testimony of the two Ford negotiators who had been "generally recognized over the years by all concerned, including the Union, as extremely honorable and credible individuals...."

Following the umpire's unfavorable decision, the plaintiffs instituted suit on January 14, 1982, in state court. The defendants removed to the federal district court where, on January 18, 1982, the case was voluntarily dismissed without prejudice to allow plaintiffs to pursue their internal union remedies.[1] Plaintiffs subsequently lost their appeals before the appeals committee and the UAW Public Review Board. On April 1, 1987, plaintiffs reinstituted their 1981 action by once again filing a complaint in state court. The case was again removed to federal district court where summary judgment was granted in favor of defendants on December 21, 1987.

## II.

■ Plaintiffs' contention on appeal, which they characterize in their brief as an issue of first impression, is that:

The International Union chose to sit back and take a neutral position on an agreement that it had negotiated. Given Ford's position favoring Casting Center bumping rights, the International's so-called neutrality, and the absence of any testimony of a single union representative "in the know," the umpire's decision in favor of Casting Center skilled tradesmen having bumping rights into the Rouge was inevitable.

Our problem with plaintiffs' argument is that we perceive it to be a mischaracterization of what occurred. Although the International Union chose to remain neutral, the individual local union units that represented respectively the MCC and the Rouge plant skilled trades employees were anything but neutral. They each participated competently and vigorously in the proceed-

---

1. Under the UAW's constitution, an internal review system is provided by which union members feeling aggrieved can challenge the actions or inactions of their local unions and its officers and agents. We have consistently held that such internal procedures, if not futile under the circumstances, and if capable of affording the relief sought, must be exhausted as a prerequisite to bringing a hybrid section 301/unfair representation action.

ings before the umpire and in the subsequent internal union proceedings. As was stated by the Public Review Board in their decision:

[T]he arbitration resulted from two units within the Local Union taking dramatically opposite views in interpreting the June 4, 1971, Agreement. The International Union decided it would not assert an official position in the arbitration, but encouraged both units to present their respective claims and to bring documentary evidence and witnesses to testify on their behalf at the hearing. While MCC representatives presented a unified argument, former officials of Local 600 were in disagreement as to the meaning of the June 4, 1971, Agreement.

In fairness to plaintiffs' contentions, it must be stated that plaintiffs do not object so much to the International's neutrality in the abstract as they do to its consequences. These consequences, according to plaintiffs, were that no union official involved in negotiating the 1971 agreement testified as to the intent of the parties.[2] Plaintiffs do not contend that the International, as an entity, somehow prohibited the testimony of union officials but, rather, that the failure or refusal of the officials themselves to testify constituted a breach of the duty of fair representation. In evaluating this argument, one must keep in mind that, when a grievance has proceeded to arbitration and an employee makes a claim that the union breached its duty of fair representation, the employee must not only prove unfair representation but also that "there is substantial reason to believe that a union breach of duty contributed to the [allegedly] erroneous outcome of the contractual proceedings." *Hines*, 424 U.S. at 568, 96 S.Ct. at 1058. Thus, the burden on plaintiffs has dual components and, although we believe they were unable to demonstrate the ability to establish either one, they certainly failed as to the second prong of the *Hines* test. The Public Review Board correctly assessed the issue as to the absence of union officials' testimony, and we adopt its characterization:

Nelson Samp, who was then an assistant to the director of the UAW's National Ford Department, declined President King's request to testify because his position was adverse to that asserted by the Dearborn unit. Former President Walter Dorosh also declined to appear. Finally, Buddy Battle, who had previously authored an article in Ford Facts which stated unequivocally that skilled tradesmen transferred to the Michigan Casting Center had the right to bump back into the Dearborn unit, did not appear because he had another commitment. A statement which king prepared for Battle's signature, which supported the Dearborn unit's position, was rejected as hearsay by umpire Hanlon and, in any event, was later disavowed by Battle.

It should be further noted that Walter Dorosh, who failed to appear before the umpire or at the appeals committee hearing, did appear at the hearing before the Public Review Board. Relative to this appearance, the Board stated:

Walter Dorosh explained at our hearing why he did not attend the appeals committee hearing. He said in his view the Union should have presented a unified position on the question. However, the people with firsthand knowledge, namely himself, Mike Rinaldi, Nelson Samp and Buddy Battle, were not in agreement as to what Local 600 and Ford had agreed to, so there were three or four different positions which would have been presented to the umpire. As a result, he would not agree to participate in a proceeding where the Union witnesses were going to present conflicting positions. Furthermore, he pointed out that at the time of the hearing he was not an officer of the Union and had not been subpoenaed.

Thus, as District Judge Taylor concluded, the witnesses who the plaintiffs contend should have testified would not have helped

---

**2.** As noted earlier, two Ford negotiators did testify. Plaintiffs specifically contend that Nel-

son Samp, Buddy Battle, and Walter Dorosh should have testified.

their case.[3]

Of perhaps even greater importance is the fact that the umpire primarily grounded his decision in the language of the 1971 agreement itself. Although arbitrators are not necessarily bound to follow the same rules of construction that courts do, where an agreement is unambiguous and clear in its terms, one generally need not inquire as to the intent of the drafters.

### III.

■ Plaintiffs also argue that the district judge improperly made factual findings in the course of considering a summary judgment motion. We disagree. There is no doubt that the district judge, in rendering her bench opinion, did state that "the Court must make the following findings of fact and law."[4] There is also no doubt that genuinely disputed material facts may not be resolved by the trial judge within the context of a summary judgment motion. From a review of the transcript it is clear to us that although the court's opinion was delivered from the bench, it was, for the most part, a prepared opinion and the statement quoted concerning the "findings of fact" was just an imprecise use of language prefacing the body of the opinion. Federal Rule of Civil Procedure 56 does not even require a judge to give an opinion in deciding a summary judgment motion, but decisions of this court have strongly urged district judges to do so to facilitate review. In her opinion, the district judge set forth the facts she found not subject to genuine dispute and then stated the legal conclusions that flowed therefrom. We find no error in this.

AFFIRMED.[5]

---

**3.** It appears that Dorosh himself would have testified in a manner favorable to plaintiffs.

**4.** Fed.R.Civ.P. 56 governing summary judgments does not require the trial judge to set forth findings of fact and conclusions of law.

**5.** Since we have found for defendants, we find it unnecessary to address their contention that plaintiffs' cause of action is barred by the applicable six months statute of limitations.