Alfred LaCORTIGLIA, Plaintiff,

v.

ALUMINUM COMPANY OF AMERICA,
et al., Defendants.

No. 1:96 CV 671.

United States District Court,
N.D. Ohio,
Eastern Division.

July 25, 1997.

Steven B. Potter, Dinn, Hochman & Potter, Cleveland, OH, Joseph E. Bolek, Beachwood, OH, for Plaintiff.

Daniel A. Ward, Brian J. Kelly, Thompson, Hine & Flory, Cleveland, OH, for Defendant Aluminum Co. of America.

David E. Roloff, Morris L. Hawk, Goldstein & Roloff, Cleveland, OH, for Defendants Intl. Union, United Auto, Aerospace

and Agricultural Implement Workers of America, Local 1050.

## MEMORANDUM OPINION AND ORDER

NUGENT, District Judge.

This is an action by Plaintiff Alfred LaCortiglia against his former employer, the Aluminum Company of America ("ALCOA"), for breach of contract pursuant to section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and against his former unions, the International Union, United Auto, Aerospace and Agricultural Implement Workers of America and Local 1050 International Union, United Auto, Aerospace and Agricultural Implement Workers of America (collectively "Union"), for breach of its duty of fair representation. This matter comes before the Court on the Motion for Summary Judgment filed by ALCOA and the Motion for Summary Judgment filed the Union, both pursuant to Federal Rule of Civil Procedure 56. (Docket # # 20, 23). For the reasons that follow, the motions for summary judgment are hereby **GRANTED.**

### FACTS AND PROCEDURAL HISTORY

In 1994 Plaintiff was employed by ALCOA as a general mechanic. In that position he was represented by the Union and was covered by the collective bargaining agreement between ALCOA and the Union. Plaintiff had been employed by ALCOA for over 20 years.

During a shift break in the early morning hours of July 5, 1994, two supervisors reported observing Plaintiff with a can of beer. Statements of Leo Harbaugh, Plaintiff's Exhibits 1, 3; Statement of Bob March, Plaintiff's Exhibit 4; Arbitration Transcript at 7, 13–15, 36–37 ("Arb.Tr."); Arbitration Opinion and Award at 4–5 ("Arb.Op."). One supervisor, Leo Harbaugh, reported witnessing Plaintiff drink the beer, while the other supervisor, Bob March, reported witnessing Plaintiff quickly move a can down to the ground. Plaintiff's Exhibits 1, 34; Arb. Tr. at 7, 13–15, 36–37; Arb. Op. at 4–5. Gerald Roberts, a supervisor sitting with Plaintiff during the shift break, was drinking a beer. Arb. Tr. at 22, 24. Plaintiff consistently has

maintained that he did not possess or consume a beer. Statement of Alfred LaCortiglia, Plaintiff's Exhibit 6; Arb. Tr. at 30, 32, 42; Deposition of Alfred LaCortiglia at 52–53, 89–90, 98.

Plaintiff was discharged effective July 12, 1994 for possessing and consuming an alcoholic beverage on company property. ALCOA Exhibit H; Arb. Op. at 2. Under ALCOA's policy, "[i]ntroduction or possession and use or distribution of intoxicating liquors" is an "[i]ntolerable offense[ ]", the penalty for which is "[s]uspension for balance of shift, plus 5 days, plus discharge." ALCOA Exhibit J. Shortly after his discharge Plaintiff filed a grievance over the discharge, which, after proceeding through the relevant grievance levels, ultimately reached arbitration. The Union represented Plaintiff throughout all grievance procedures, including the arbitration. Plaintiff's grievance was denied at all levels.

Throughout the grievance and arbitration procedures the Union argued that Plaintiff had not been drinking. Third Step Grievance Notes dated July 29, 1994, Plaintiff's Exhibit 8; Notes of Meetings Regarding Pending Grievances, Plaintiff's Exhibit 10; Fourth Step Grievance Hearing Notes dated October 13, 1994, Plaintiff's Exhibit 13; Arb. Tr. at 15–16, 22, 25–27, 30, 32, 37, 39, 41–42, 46. The Union also challenged the veracity of the statements of Supervisors Harbaugh and March, argued that he should have been given a breathalyzer in accordance with company practice, and argued that the beer can retrieved by Supervisor Harbaugh from Plaintiff did not belong to Plaintiff. See Plaintiff's Exhibits 8, 13; Arb. Tr. at 10–11, 15–18, 22–23, 25–28, 31–32, 39, 41–42. The Union further raised the issue of the tense relationship between Supervisor Harbaugh and Plaintiff, apparently suggesting that Harbaugh might have had a reason to fabricate his story. See Arb. Op. at 3; see also Plaintiff's Exhibits 8, 13.

At the arbitration, the Union called Gerald Roberts and Noah Ball, the two employees who were with Plaintiff during his shift break. Both Roberts and Ball testified that they did not see Plaintiff possess or consume alcohol. Arb. Tr. at 22, 25–27, 39, 41. The

Union also presented testimony that the area near where Plaintiff was sitting during the shift break contained empty beer cans, supporting its theory that the beer can was not Plaintiff's. *Id.* at 19, 37–38. Further, the Union put on evidence that under company practice, individuals suspected of consuming alcohol are sent to the dispensary for a breathalyzer and then sent home for the remainder of the shift. *Id.* at 17–18, 25, 28.

The Arbitration Board denied the grievance, finding that "the evidence presented showed that the grievant had consumed some beer and was in possession of a can of beer on July 5, 1994." Arb. Op. at 6. The Arbitration Board found that ALCOA's failure to suspend Plaintiff for the balance of the shift "does not constitute an error on the part of the Company which should nullify a future disciplinary action," and that it was unnecessary to send Plaintiff to the dispensary since Plaintiff was caught possessing and consuming alcohol. *Id.* at 7. The Arbitration Board found it unpersuasive that the area near where Plaintiff, Roberts, and Ball were sitting during the shift break contained discarded beer cans because the Union presented no evidence that other employees (other than Roberts) were drinking in the area and that ALCOA, with knowledge of this activity, treated them more favorably than Plaintiff. *Id.*

Plaintiff subsequently filed this action against ALCOA for breach of the collective bargaining agreement pursuant to section 301 of the LMRA and against the Union for breach of its duty of fair representation. For the reasons discussed below, the Defendants' motions for summary judgment are granted.

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting FED.R.CIV.P. 56(c)). A fact is material only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is genuine requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *see also U.S. v. Hodges X–Ray, Inc.,* 759 F.2d 557, 562 (6th Cir.1985).

Summary judgment should be granted if the party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir.1995) (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). Accordingly, "[t]he mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995) (citing *Anderson,* at 248–49, 106 S.Ct. at 2510–11). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11 (citations omitted).

Once the moving party has satisfied its burden of coming forward with evidence demonstrating an "absence of a genuine issue of material fact," *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553, the burden then shifts to the nonmovant. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dept. of Transp.,* 53 F.3d 146,

150 (6th Cir.1995). Federal Rule of Civil Procedure 56(e) provides as follows:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

FED.R.CIV.P. 56(e). The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though the parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred that, " '[i]t is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.' " *Wiley v. U.S.*, 20 F.3d 222, 226 (6th Cir.1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988)). Rule 56(e) also has certain, more specific requirements:

> [it] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies of all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225–26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect. The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver. As the Sixth Circuit stated in *Wiley*,

> [i]f a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed

to have been waived, and [the Court of Appeals] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 248–49, 106 S.Ct. at 2510–11. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. at 2511.

### DISCUSSION

■ This matter is a so-called "hybrid" section 301 action, as it involves "a direct challenge to the private settlement of disputes under [the collective-bargaining agreement]." *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 165, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983) (internal quotations omitted). An employee covered by a collective bargaining agreement that provides for final and binding grievance and arbitration procedures is, with the exception of "very limited judicial review," bound by the result of those procedures. *Id.* at 163–64, 103 S.Ct. at 2289–91 (internal citations omitted). The United States Supreme Court has recognized, however,

> that this rule works an unacceptable injustice when the union representing the employee in the grievance / arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation. In such an instance, an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding.

*Id.* at 164, 103 S.Ct. at 2290 (internal citations omitted).

■ Accordingly, in a hybrid section 301 action "the two claims are inextricably interdependent. To prevail against either the company or the Union, ... [the employee] must not only show that [his] discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." *DelCostello*, 462 U.S. at 164–65, 103 S.Ct. at 2291 (internal quotations omitted). The employee may sue both the employer and the union, or simply one of them, "but the case he must prove is the same whether he sues one, the other, or both." *Id.* at 165, 103 S.Ct. at 2291.

■ A union breaches its "statutory duty of fair representation * * * when [its] conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967) (internal citations omitted). This standard is stated in the disjunctive, so "the three named factors are three separate and distinct possible routes" for establishing a union's breach of its duty. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 584 (6th Cir.1994). In *Air Line Pilots Association, Int'l v. O'Neill*, 499 U.S. 65, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991), the United States Supreme Court clarified the meaning of "arbitrary" as it relates to a union's conduct. The Supreme Court held that "a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness[ ] as to be irrational." 499 U.S. 65, 67, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991) (internal quotation omitted).

■ Thus, poor judgement or negligence will not establish a breach of a union's duty of fair representation. *Black*, 15 F.3d at 584. And while the union's duty includes undertaking a "reasonable investigation," *Black*, 15 F.3d at 585, that duty "does not require [the] union to exhaust every theoretically available procedure simply on the demand of a union member." *St. Clair v. Local Union No. 515, Int'l Bhd. of Teamsters*, 422 F.2d 128, 130 (6th Cir.1969) (internal citations omitted). A union may breach its duty, however, if it processes a grievance in a perfunctory manner. *Milstead v. International Bhd. of Teamsters*, 580 F.2d 232, 235 (6th Cir.1978).

■ Moreover, the employee "must meet the onerous burden of proving that the grievance process was 'seriously flawed by the union's breach of its duty * * *.'" *Black*, 15 F.3d at 585 (quoting *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976)) (emphasis added in *Black*) (union's failure to summon or interview "the one witness who could have effectively and objectively corroborated Black's testimony on a vital matter" was breach that seriously affected grievance process); *see also Taylor v. Ford Motor Co.*, 866 F.2d 895, 898–99 (6th Cir.1989) (union's failure to present witnesses whose testimony would not have helped employee's case not a breach seriously affecting grievance process).

Before reviewing the Union's conduct in this case, it is important to note that the only issues before the Court are whether the Union breached its duty of fair representation and, if so, whether ALCOA breached the collective bargaining agreement. As discussed below, the Court finds that the Union did not breach its duty of fair representation, making it unnecessary to examine whether ALCOA breached the collective bargaining agreement by discharging Plaintiff, either because ALCOA did not follow proper procedures, or because Plaintiff in fact was not in possession of or consuming beer during his shift break on July 5, 1994. Because Plaintiff cannot establish an element essential to his hybrid section 301 action, ALCOA and the Union are entitled to a summary judgment as a matter of law.

Plaintiff's arguments regarding the Union's breach of its duty generally challenge the arbitrariness of the Union's conduct. Plaintiff first alleges that the Union breached its duty because it conducted only a cursory investigation of the incident. Plaintiff notes that no one from the Union's bargaining committee and that only one person—Phil Simonski—from the committee responsible for investigating grievances interviewed him in connection with the incident. The interview with Mr. Simonski consisted of accom-

panying Plaintiff to the initial meeting where ALCOA suspended him. Plaintiff also points out that the Union has no written notes of the investigation or interviews with Plaintiff regarding the incident.

These allegations are insufficient to demonstrate a breach of the Union's duty. Even if true, they do not establish that the Union failed to obtain and present all relevant evidence throughout the grievance and arbitration procedures. Plaintiff may not have been interviewed by a slew of Union representatives and the Union may have no written documentation of its investigation, but these facts do not demonstrate that the Union did not obtain and present Plaintiff's side of the story. In fact, the record supports the conclusion that the Union gathered and presented the relevant facts.

■ During the grievance and arbitration proceedings the Union argued, consistent with Plaintiff's position, that he did not possess or consume a beer. See Plaintiff's Exhibits 8, 10, 13; Arb. Tr. at 15–16, 22, 25–27, 30, 32, 37, 39, 41–42, 46. Moreover, during the grievance meetings the Union challenged the credibility of the statements of Supervisors Harbaugh and March, noting that the Supervisors completed second, more detailed statements. See Plaintiff's Exhibits 8, 13. The Union raised the issue of the acrimonious relationship between Plaintiff and Supervisor Harbaugh. See Plaintiff's Exhibits 8, 13; Arb. Op. at 3. The Union further noted the condition of the area around where Plaintiff was sitting during his break, and ALCOA's failure to send him to the dispensary for a breathalyzer and to suspend him immediately for the remainder of the shift in accordance with ALCOA practice. See Plaintiff's Exhibits 8, 13; Arb. Tr. at 10, 17–19, 25, 28, 37–38. Based on this performance, the Union's alleged failure to conduct numerous interviews of Plaintiff or to maintain written notes of its investigation are not arbitrary, discriminatory, or in bad faith, and thus do not constitute a breach of its duty of fair representation.

Plaintiff next argues that the Union's preparation for and performance at the arbitration were deficient. As support for this contention, Plaintiff notes that Ken Koeppen,

the Union member representing Plaintiff at the arbitration, interviewed Plaintiff only once before the actual arbitration for roughly ten minutes. Plaintiff also states that only Mr. Koeppen interviewed Noah Ball, and that was not until the day of the arbitration hearing. Plaintiff also points to the absence of notes taken by Mr. Koeppen regarding his preparation and investigation, and the fact that the Union never received from ALCOA copies of the statements of Supervisors Harbaugh and March describing the incident. Additionally, Plaintiff alleges that the Union failed to introduce evidence regarding ALCOA's practice of sending an employee who is suspected of drinking to the dispensary for a breathalyzer and suspending him for the balance of the shift, including the incident during one of Plaintiff's grievance meetings when ALCOA adjourned the meeting temporarily to take another employee to the dispensary for a breathalyzer. Plaintiff also contends that the Union failed to introduce evidence showing that other employees caught with alcohol were disciplined but not discharged by ALCOA.

Again, taken in the light most favorable to Plaintiff, these allegations do not demonstrate that the Union acted arbitrarily, discriminatorily or in bad faith. The record establishes that Mr. Koeppen thoroughly presented Plaintiff's case to the Arbitration Board. First, Mr. Koeppen presented detailed testimony by Plaintiff, Noah Ball and Gerald Roberts describing their individual recollections of the relevant events, as well as testimony by all three gentlemen that Plaintiff did not possess or consume alcohol. Arb. Tr. at 21–32, 39–42. It is difficult to imagine how Mr. Koeppen's presentation to the Arbitration Board could have been enhanced had he spent more time interviewing Plaintiff or Mr. Ball, or taking notes documenting his preparation. Second, the Union requested but never received the Supervisors' statements from ALCOA. Plaintiff's Exhibits 10, 13; Arb. Tr. 17, 20. And in any event, Mr. Koeppen cross-examined Supervisors Harbaugh and March and introduced conflicting testimony by Plaintiff and Messrs. Ball and Roberts regarding the relevant events. Arb. Tr. at 10–12, 14–16, 21–32, 39–42. Third,

contrary to Plaintiff's assertion, Mr. Koeppen on *several occasions* raised the dispensary and immediate suspension issue. *See id.* at 10, 17, 25, 28–29, 31–32. Fourth, the Union did introduce the disparate punishment issue during the grievance procedure, *see* Arb. Op. at 3, and while Mr. Koeppen did not introduce evidence on this issue at the arbitration, such evidence would not have been helpful to Plaintiff since three of the four employees mentioned by Plaintiff were caught merely possessing alcohol, whereas Plaintiff was caught possessing and consuming alcohol. *See* Deposition of Noah Ball at 21 ("Ball Dep."); Deposition of Michael McAdoo at 43 ("McAdoo Dep."). Moreover, at least one of the employees caught possessing alcohol was discharged. *See* Ball Dep. at 21; McAdoo Dep. at 43. In short, Plaintiff has not demonstrated that the Union's conduct was discriminatory, in bad faith, or "so far outside a wide range of reasonableness[ ] as to be irrational," 499 U.S. at 67, 111 S.Ct. at 1130.

Because Plaintiff cannot demonstrate an essential element of this hybrid section 301 action, Defendants ALCOA and the Union are entitled to a summary judgment as a matter of law.

### CONCLUSION

Accordingly, the Motion for Summary Judgment by ALCOA and the Motion for Summary Judgment by the Union are hereby **GRANTED.**

IT IS SO ORDERED.

### ORDER

This matter comes before the Court on Defendants' motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated in the Memorandum Opinion issued with this Order, the Motion for Summary Judgement filed by Defendant Unions are hereby **GRANTED.**

ALL COSTS TO PLAINTIFF.

IT IS SO ORDERED.